# IN THE COURT OF APPEALS OF IOWA

No. 21-1673
Filed May 11, 2022

**IN THE INTEREST OF R.G.-O.,**
**Minor Child,**

**D.O.,**
    Petitioner-Appellee,

**J.G.-M.,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Chickasaw County, David F. Staudt, Judge.

A father appeals the order terminating his parental rights to his child under Iowa Code section 600A.8 (2020). **AFFIRMED.**

Amanda T. Adams of O'Flaherty Law, Des Moines, for appellant.

Sarah A. Reindl of Reindl Law Firm. P.L.C., Mason City, for appellee.

Mark A. Milder of Mark Milder Law Firm, Denver, attorney and guardian ad litem for minor child.

Considered by May, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

This appeal involves the termination of a father's parental rights to a child born in January 2020. The father was in a relationship with the child's mother at the time of birth, and he lived with the mother and the child for several months after. But by June, the father had begun a new relationship and moved out of the home.

The child's birth certificate did not name the father, and there was no paternity order on visitation and support. But the father visited the child sporadically, though the visits were never unsupervised or overnight. The father also provided some financial support to the mother, but the amount is in dispute. He never added the child to the insurance policy provided by his employer despite her eligibility.

The mother died in November 2020. Law enforcement asked who would take the child and her half-sibling.[1] A maternal aunt and uncle volunteered to take both children while the father remained silent. In the weeks that followed, the father visited the child briefly twice but provided no financial support.

On December 1, the father petitioned to establish paternity. Those proceedings were stayed when, one week later, the maternal uncle petitioned to terminate the father's parental rights under Iowa Code chapter 600A (2020). The parties agreed the child would remain in the care of the aunt and uncle pending the court's ruling on the termination petition.

---

[1] The parental rights of the half-sibling's father have since been terminated, and the maternal aunt and uncle have adopted the half-sibling.

The termination trial was held in May and June 2021. The district court entered its order terminating the father's parental rights on October 25. The court found clear and convincing evidence that the father abandoned the child by failing to provide significant financial support or maintain substantial contact.

The father appeals, challenging the finding that he abandoned the child. He also contends the district court erred by considering events that occurred after filing of the termination petition. We review his claims de novo, giving weight to the trial court's fact findings. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).

Iowa Code section 600A.8(3) allows the court to terminate parental rights if a parent has abandoned a child. "To abandon a minor child" means to "reject[] the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(20). The statute considers a parent to have abandoned a child six months of age or older "unless the parent maintains substantial and continuous or repeated contact with the child." *Id.* § 600A.8(3)(b).

In determining whether a parent has abandoned a child under section 600A.8(3), the parent's subjective intent does not control. *Id.* § 600A.8(3)(c). To prevent a finding of abandonment, a parent must provide "contribution toward support of the child of a reasonable amount, according to the parent's means." *Id.* § 600A.8(3)(b). The parent must also show "substantial and continuous or repeated contact" by:

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.*

In its ruling, the district court summarized the father's brief and intermittent contact with the child:

There are some months in which [the father] did not visit the child. There are more months in which he did. The petitioner's evidence did reveal that [the father] did not maintain substantial contact with his child. The visits [the father] highlight consist of meetings once a month with an infant/toddler for less than one hour per visit. For a father attempting to maintain substantial and continuous contact with an infant/toddler he failed miserably. One-hour visits per month or every two weeks with a small child such as [R.G.-O.] will not suffice to maintain a substantial and continuous presence in the child's life.

From the time of [the mother]'s death, [the father] was complicit in allowing [the maternal aunt and uncle] to effectively begin raising his child. It is somewhat understandable that at the time of [the mother]'s death that [the father] could have felt allowing the two children to remain together would assist them in coping without their mother's presence. [The father] failed to make any substantial effort to return [R.G.-O.] to his custody. He seemed compliant and comfortable with the child's aunt and uncle raising the child until such time as they filed a petition to terminate his parental rights. Even after the petition for termination of parental rights was filed, [the father] failed to make any serious effort at establishing a substantial and continuous relationship with his child. [The father] has not completely disassociated himself from his child; however, he has failed to make any substantial effort at truly becoming a parent to the child. He remained very comfortable allowing [the mother] to raise the minor child until her untimely death. He again became very comfortable allowing the aunt and uncle to raise his minor child.

The guardian ad litem expressed similar sentiments in his report to the court. The finding is supported by an exhibit identifying the dates and lengths of the father's visits after the mother died. The exhibit shows the father visited the child on just

eleven occasions over a five-month period, with visits lasting no longer than one-half hour each.

The father claims he maintained substantial and continuous or repeated contact with the child as stated in section 600A.8(3)(b)(3) by openly living with the child for six months in the year before the filing of the termination petition. But the child was born in January, and the father no longer lived in the same home by June. At most, the father lived with the child for only four and one-half months, short of the six months required by the statute. It does appear that the father visited the child monthly, although for brief periods. But this alone does not preclude a finding of abandonment. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993) (noting that "total desertion is not required for a showing of abandonment"). Spending one hour with a child each month is scarcely enough to establish oneself in a young child's memory, let alone meet "the duties imposed by the parent-child relationship." The father's contact with the child was marginal, at best.

Besides having contact with the child, a parent must also provide adequate financial support to avoid a finding of abandonment. The father failed to do so. The evidence shows that the father earns $23.00 per hour and regularly works overtime at a rate of $34.50 per hour—earning $58,981.34 in 2020 while the mother earned $21,545.35. Despite earning more than twice that of the mother, the father provided little financial support for the child before the mother's death. That did not change when the child went to live with the aunt and uncle. As the guardian ad litem noted,

> In the past year, his financial support has been sporadic and far below what he can and should have contributed. This case has been pending in court for half a year and it does not appear he has paid

any monetary support in that time. He has provided some supplies, but the amount must be less than $200-300.

Coupled with the little time the father spent with the child once his relationship with the child's mother ended, we agree there is clear and convincing evidence to terminate the father's parental rights under section 600A.8(3)(b).

Having found the father abandoned the child, we must determine whether termination is in the child's best interests. *See B.H.A.*, 938 N.W.2d at 232.

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Iowa Code § 600A.1(2). The father has failed to affirmatively assume the duties encompassed by being a parent. Since the mother's death, that role has been fulfilled by the aunt and uncle. In view of the father's limited contact with and lack of support of the child, the child's best interests are served by terminating parental rights to allow the aunt and uncle to adopt the child as they have adopted the child's half-sibling.

The father also argues the district court erred by considering his failure to provide any financial support to the child after the filing of the termination petition. He claims the plain language of the statute only allows us to consider events that occurred in the year before the filing of the petition. In support of his claim, he cites only to section 600A.8(3)(b)(3), which lists living with a child as one of the ways a parent can show "substantial and continuous or repeated contact" with a child.

Although that provision refers to "a period of six months within [a] one-year period," that period must occur "immediately preceding the termination of parental rights *hearing*," not the filing of the petition.[2]  *See* Iowa Code § 600A.8(3)(b)(3) (emphasis added).  Nothing in chapter 600A limits the evidence the court may consider to the period before the filing of the termination petition.  Instead, the express terms of the statute suggest the court can consider the events preceding the termination hearing.  The district court properly considered events that occurred after the filing of the termination petition.

Because clear and convincing evidence shows the father abandoned the child under Iowa Code section 600A.8(3)(b) and termination is in the child's best interests, we affirm.

**AFFIRMED.**

---

[2] Section 600A.8(3)(b) also refers to the child's age "when the termination hearing is held," not the child's age when the petition is filed.